David W. BECK and Wilma J. Beck, Plaintiffs–Respondents,

v.

HOEL–STEFFEN CONSTRUCTION COMPANY, a corporation, Defendant–Appellant.

No. 11583.

Missouri Court of Appeals, Southern District, Division One.

Sept. 15, 1980.

Joseph A. Bohrer, Yates, Mauck & Robinett, Inc., Springfield, for defendant–appellant.

Joe W. Collins, Stockton, for plaintiffs–respondents.

FLANIGAN, Chief Judge.

Plaintiffs, David W. Beck and Wilma J. Beck, his wife, as purchasers, entered into a "sale contract" with defendant Hoel–Steffen Construction Company, a Missouri corporation, as seller. The contract involved the purchase of real estate in Cedar County for a price of $57,500. Upon defendant's refusal to convey the land, plaintiffs brought this action for specific performance. The trial court found for plaintiffs and granted the requested relief. Defendant appeals.

Defendant contends that the trial court erred in decreeing specific performance for the reason that the contract "plainly stated that a sale was subject to approval of defendant and defendant admittedly disapproved the sale." This court holds that the defendant did approve the sale and that the trial court properly decreed specific performance.

Plaintiffs lived in Cedar County and defendant had its headquarters in St. Louis. After some preliminary negotiations defendant's employee, Mrs. Lychner, prepared the "sale contract," using a printed form which, according to defendant, is "apparently used in the St. Louis area by real estate agencies," and contains "numerous provisions not applicable to the transaction between the parties here." No real estate agent was involved in the instant transaction.

Robert Hoel, president of defendant, signed the sale contract on behalf of defendant on April 2, 1977. Before so doing, Hoel struck out several of the printed provisions by "Xing" them out with a typewriter. Hoel put his initials alongside each of the stricken portions. The contract, having been executed by defendant, was taken later that day by an employee of defendant to Cedar County and presented to the plaintiffs. The plaintiffs, who made no changes in the contract, initialed the stricken portions and signed it.

The agreement called for an earnest deposit of $5,000 with the balance of $52,500 to be paid on closing. Upon signing the agreement plaintiffs made the $5,000 payment to defendant's employee.

Material portions of the agreement are as follows: (The italicized and underlined portions are typewritten or hand written; the other portions are printed.)

### SALE CONTRACT

*Cedar County* Missouri

*April 2, 1977*

Received from *David W. Beck and Wilma J. Beck, his wife, (with survivorship rights)*, hereinafter called purchaser, the sum of *Five Thousand and no/100* Dollars (*$5,000.-00*) as earnest deposit and as part of the cash consideration for the purchase of the following described property situated in the *County* of *Cedar*, Missouri, known or described as:

[Description]

... which property is this day agreed to be sold to purchaser subject to approval of seller by noon of *April 4, 1977*, and not otherwise (and if not so approved earnest deposit shall be returned to purchaser) for the total sale price of *Fifty Seven Thousand Five Hundred and no/100* Dollars (*$57,500.-00*) on the following terms:

| | |
|---|---|
| Earnest deposit made as per this receipt | $ 5,000.00 |
| Additional earnest deposit to be made by purchaser on | NONE |
| Cash to be paid on closing date of sale as hereinafter fixed (subject to adjustments as herein provided) | 52,500.00 |

NONE
Agent
By          NONE
Approved          Not Applicable          , 1977
I/we agree to pay Not Applicable

Approved on date first above written:

the Commission as provided on the reverse side hereof, to be a lien on said property.

is authorized to order title examined

/s/ David W. Beck

Purchaser

Hoel-Steffen Construction Company by:

Seller

/s/ Wilma J. Beck

Purchaser

/s/ Robert F. Hoel

Seller

Address: Rt # 2
Stockton, Mo.

Address: St. Louis, Mo.

---

A typewritten "special agreement," included in the sale contract, provided that a crop of winter wheat could be harvested by defendant's tenant "after the closing date of this sale, but before June 30, 1977."

On April 3, 1977, the plaintiffs went to St. Louis. On that day plaintiffs and defendant, the latter acting through its president, Robert Hoel, signed a separate document stating that the parties "do amend the sales contract by and between David W. Beck and Wilma J. Beck, his wife, and the Hoel–Steffen Construction Company to allow the existing wheat crop of this date to be harvested after June 30, 1977, if weather conditions prohibits (sic) the harvest prior to June 30, 1977."

On the morning of April 4, 1977, defendant sent plaintiffs a mailgram which they received before noon. The mailgram contained this message:

"In accordance with the sales contract, dated April 2, 1977, concerning certain property in Stockton, Missouri, we are exercising the clause to disapprove the sales contract by the seller prior to noon on April 4, 1977. The sale is, hereby recinded (sic) and disapproved by the seller in accordance with said contract clause and the $5,000 earnest deposit is hereby returned payable to David W. Beck and Wilma J. Beck, his wife, by cashiers check from Sac River Valley Bank delivered to Joe Collins, their attorney. Hoel–Steffens Construction Company, Robert F. Hoel, President, 4547 Green Park Rd., St. Louis, Missouri 63123."

Plaintiffs refused to accept the $5,000 refund and this action ensued.

■■■ Where an agreement is susceptible of two constructions, one of which renders the contract invalid and the other sustains its validity, the latter construction is preferred. *Perbal v. Dazor Manufacturing Corp.*, 436 S.W.2d 677, 689[27] (Mo.1968). "[A] 'contract of doubtful meaning will be given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage of another.' *Veatch v. Black,* 363 Mo. 190, 250 S.W.2d 501, 507[2, 3]." *Hammond v. Wheeler,* 347 S.W.2d 884, 895[6] (Mo.1961). A contract must be construed in its entirety, giving effect to every part thereof, if that be fairly and reasonably possible, and in construing a contract of doubtful meaning, the court properly may consider the subject matter of the contract, the facts and circumstances attending execution thereof, and the apparent purpose which the parties were undertaking to accomplish. *McIntyre v. McIntyre,* 377 S.W.2d 421, 425[4, 5] (Mo.1964). The rule that an ambiguous contract should be construed strongly against the party who drew it is one of several subsidiary construction aids and may be utilized when other means of construction fail. *McIntyre,* supra, at p. 426.

1. See 131 A.L.R. 955–Rule of priority in case of repugnant clauses in contract.

Defendant bases its position on this language of the sale contract: "... which property is this day agreed to be sold to purchaser subject to approval of seller by noon of April 4, 1977, and not otherwise (and if not so approved earnest deposit shall be returned to purchaser) ..." This opinion will refer to the foregoing language as the "approval clause."

It is defendant's contention that the sale contract, although signed by the plaintiffs and the defendant, had no vitality unless and until it was approved by defendant, under the terms of the approval clause, by noon of April 4. Defendant asserts that such approval was not accorded and that, indeed, defendant's express disapproval was communicated to the plaintiffs.

Above the line in the sale contract calling for the signature of the seller there is the printed word "approved," followed by a blank which obviously calls for the insertion of a date because the blank is as follows: "_____, 19____." Inserted in the blank are the typewritten words "not applicable." This line of the sale contract will be called the "later clause."

If the approval clause had been printed in full (and it was except for the date) the typewritten portion of the later clause would serve to eliminate the approval clause under the familiar principle that typewritten portions prevail over printed portions. *Smith v. Worsham,* 552 S.W.2d 367, 372 (Mo.App.1977); *National Heater Co. v. Corrigan Co. Mechanical Contractors, Inc.,* 482 F.2d 87 (8th Cir. 1973).

Is the later clause inconsistent with the approval clause? If so, which prevails over the other or does their inconsistency vitiate the contract? If the approval clause prevails over the later clause,[1] what purpose, if any, was served by the act of Robert Hoel, president of the defendant, in signing the sale contract on behalf of the defendant on April 2, 1977? Was the approval clause in fact *satisfied* by his so doing? Is there

merit in plaintiffs' argument that the approval clause "is surplusage, left in the contract by defendant who prepared it, through oversight and not by design"? These questions, and perhaps others, may inspire academic curiosity but they need not be explored.

■ Assuming, but not deciding, that the approval clause possesses the validity and significance which defendant ascribes to it, this court holds that it was satisfied on April 3 when the defendant, through its president, signed the written amendment to the sale contract. In so doing the defendant "approved" the sale contract.

Words are not the only source of "approval." Approval "may be implied from the conduct of the parties." *Thummel v. King*, 570 S.W.2d 679, 689 (Mo. banc 1978); *Newport v. Hedges*, 358 S.W.2d 441, 447 (Mo. App.1962). See also *Sanders v. DeWitt*, 579 S.W.2d 707, 711[2] (Mo.App.1979).

The approval clause contains no language indicating the manner in which defendant's approval is to be manifested. The only line on the "sale contract" calling for seller's signature had already been filled in by defendant's president in signing the document on defendant's behalf on April 2. An approval deadline of noon on April 4 was prescribed. It seems odd that an agreement which was acceptable to defendant on April 2 might not remain acceptable to it two days later.

As defendant's brief recognizes, the printed form embodying the sale contract was used by real estate agents who customarily would first obtain the signature of the buyer and then present the form to the seller. With the deadline prescribed in the approval clause, the buyer would know that his offer would terminate at the time specified and his earnest money would be refunded.

In its brief defendant says: "When the sale contract was delivered to plaintiffs on April 2, 1977, defendant had no way of knowing if the provisions thereof would be satisfactory to plaintiffs and, if not, whether changes proposed by plaintiffs would be acceptable to the defendant. Considering these facts, it does not seem illogical that defendant would reserve to itself the right to approve the 'sale contract' *subsequent to its execution by the plaintiffs.*" (Emphasis added.)

If, as defendant argues, the purpose of the approval clause was to reserve to defendant the right to approve the contract *after* it was executed by the plaintiffs, that purpose was achieved when defendant (and plaintiffs) signed the amendment on April 3, which, of course, was subsequent to the execution of the sale contract by plaintiffs.

In making the amendment the parties recognized the vitality of the sale contract. If there was no pre-existing agreement, it was incapable of being amended. The making of the amendment was sufficient to constitute timely approval by defendant, thereby satisfying the approval clause if satisfaction were needed. The subsequent unilateral attempt by defendant to disapprove, by sending the mailgram, could not impair the agreement which had achieved efficacy before disapproval was attempted. See Restatement of Contracts § 484, p. 924, Illustration 1.

■ In their respective briefs able counsel for both sides have failed to cite any authority which is factually similar. The research of this court has been similarly unrewarding. This court's holding is consistent with a somewhat analogous principle found in the law pertaining to ratification of voidable contracts. That principle is that a contract, voidable on the ground of fraud, may not be rescinded or cancelled if the defrauded party, after discovery of the fraud, enters into a modification of the original agreement. By the act of modification, the right to rescind is waived. This is a form of ratification or "approval" of the original agreement as modified. See *McCaw v. O'Malley*, 298 Mo. 401, 249 S.W. 41, 45[10] (1923); *Rock Island Implement Company v. Wally*, 268 S.W. 904, 912[10] (Mo.App.1925); *Sunrise Farms, Inc. v. Wright*, 376 So.2d 457 (Fla.App.1979); *Green v. Ford Motor Credit Corporation*, 146 Ga.App. 531, 246 S.E.2d 721, 723[3]

(1978); *Ajamian v. Schlanger*, 20 N.J.Super. 246, 89 A.2d 702, 704[1–3] (1952); *Risley v. McAdams*, 108 S.W.2d 443, 444 (Tex.Civ. App.1937). See also 7 A.L.R.2D 294–Joining in instrument as ratification of or estoppel as to prior ineffective instrument affecting real property.

The judgment is affirmed.

TITUS, GREENE and PREWITT, JJ., concur.