In the ESTATE OF Mae Kathryn WOOLEY, Deceased.

Charles T. ELLIS and Edith LaNell Ellis, Respondents,

v.

The ESTATE OF Mae Kathryn WOOLEY, Robert S. Bauer, Personal Representative, Appellant.

No. WD 36087.

Missouri Court of Appeals, Western District.

July 16, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied

Dec. 3, 1985.

Application to Transfer Denied Jan. 15, 1986.

Walter D. McQuie, Jr., Montgomery City, for appellant.

Craig A. Van Matre, Columbia, for respondents.

Before CLARK, P.J., and SOMERVILLE and KENNEDY, JJ.

CLARK, Presiding Judge.

This appeal is from a decree which ordered appellant executor specifically to perform an agreement made by appellant's decedent with respondents to discount the balance payable under a real estate mortgage note. The issue is whether the unperformed contract of the decedent is specifically enforceable against the estate and the personal representative under the provisions of § 473.303, RSMo.Supp.1984.[1] We conclude it was not and therefore reverse.

There is no dispute as to the facts. The note in question was given in 1981 in a real estate transaction and was payable to the deceased, Mae Kathryn Wooley, and Madeline Bauer McCabe, her daughter. It was in the principal amount of $65,000.00 and was secured by a deed of trust on the property sold, real estate located in Texas. Repayment was by 59 monthly installments of $744.52, including interest at 13½%, and

---

1. "473.303. Specific execution of contract of decedent—petition.—1. If a decedent entered into a contract, specifically enforceable in equity, and did not execute the same in his lifetime, nor give power by will to execute the same, the other party, wishing specific execution of the contract, or the personal representative of the decedent, may present a verified petition to the court, setting forth the facts and stating that no part of the contract has been satisfied except as set forth, and praying that an order be made that the personal representative execute such contract specifically, by executing a deed for the same".

a lump sum or "balloon" payment due on the 60th month.

In 1982, respondents acquired the property from the original purchasers and assumed the obligation of the note. Some months later, respondents and Mrs. Wooley discussed an accelerated retirement of the debt for cash. The discussion culminated in a letter sent by Mrs. Wooley to Mr. Ellis on May 19, 1983. In the letter Mrs. Wooley offered to sell the note for $55,000.00. At that time, the unpaid principal balance was $64,752.14. Respondents agreed and arranged an escrow with a title insurance company in Texas to handle the payment and assignment of the note.

Madeline McCabe was not a party to the discussions between her mother and respondents and, so far as this record shows, she was unaware Mrs. Wooley had proposed to discount the note by some $10,000.00 in return for an immediate cash payment. For their part, however, Mrs. Wooley and respondents recognized that the transaction depended on obtaining a release from Mrs. McCabe. The Texas title company engaged by respondents included the requirement of a release from Mrs. McCabe in the instructions they sent to Mrs. Wooley.

For some months before the transaction with respondents was first proposed, Mrs. Wooley had been attempting to persuade her daughter to assign the interest Mrs. McCabe held in the note to Mrs. Wooley, but without success. During the time relevant to this suit, Mrs. McCabe lived in Virginia and Mrs. Wooley lived in Missouri. At some time early in 1983 or before, Mrs. Wooley consulted an attorney about obtaining a release of her daughter's interest in the note. In February, 1983, the attorney wrote Mrs. McCabe requesting that she sign and return an "Assignment and Endorsement" the attorney had prepared setting over to Mrs. Wooley all title to and interest in the note. Mrs. McCabe either ignored the request or told her mother she was unwilling to release the note. The next communication shown in this record is a letter Mrs. Wooley sent Mrs. McCabe

June 16, 1983 in which she protested her daughter's failure to sign the assignment enclosed with the attorney's letter of the previous February and threatened suit.

Mrs. Wooley died five days later on June 21 without having received the release or assignment from Mrs. McCabe and without having endorsed the note or executed any documents to comply with the instructions by the Texas title company. As of the date of Mrs. Wooley's death respondents had not deposited any money with the title company to perform their part of the agreement and, as later developments disclosed, respondents did not themselves have the funds with which to make the $55,000.00 payment.

Documentary evidence in the case suggests that Mrs. McCabe was not aware on June 21, 1983, or for some days thereafter, that her mother had died. On June 23, 1983, Madeline sent a letter to Mrs. Wooley enclosing the signed assignment form which had been supplied by the attorney the previous February. The letter expressed Mrs. McCabe's concern over "many phone calls and threatening letters", her opinion that nothing could have been done in court and she wished her mother good luck. That letter with the assignment apparently reached appellant executor in due course at some time within the week following Mrs. Wooley's death.

In the point dispositive of the case, appellant contends the decree for specific performance was in error because the executory agreement to discount the note could not have been enforced against Mrs. Wooley on or prior to the date of her death. Although respondents could conceivably have asserted some claim against Mrs. Wooley for loss of the agreed bargain, appellant says the available relief was not by specific performance because without the concurrence of the co-payee, Mrs. McCabe, Mrs. Wooley was incapable of satisfying the condition of the agreement to assign and release the note. Respondents counter by pointing out that the obstacle was removed when the assignment by Mrs.

McCabe was delivered, albeit some days after Mrs. Wooley had died.

Even though it may be that the delivery postmortem of the McCabe assignment gave appellant the capacity to perform, it is the enforceability of the contract in equity against the decedent by which respondents' suit under § 473.303, RSMo.Supp.1984 must be measured. We therefore turn next to an analysis of the contract status and rights as they existed between the parties on June 21, 1983.

For purposes here, we reject appellant's argument that the discussions recited earlier between Mrs. Wooley and Mr. Ellis did not progress beyond an offer and counter offer stage. The consequence of those discussions was a bilateral contract, a promise for a promise. Respondents agreed that if the note were assigned and released, they would pay $55,000.00. Mrs. Wooley promised that if the money were paid, she would assign and release the note. These promises were, however, subject to the condition that Mrs. Wooley procure from Madeline McCabe the assignment of her interest in the note. Had Mrs. McCabe persisted in her refusal to assign her interest in the note, the agreement would not have been specifically enforceable by respondents against Mrs. Wooley because Mrs. Wooley was incapable of transferring full ownership of the debt.

Mrs. Wooley was fully aware of her inability to perform the agreement with respondents until she could persuade her daughter to release the note. This awareness is demonstrated by Mrs. Wooley's repeated demands and later threats to her daughter and the fact that Mrs. Wooley made no attempt to perform herself so long as she did not have ownership of the full interest in the note. Although respondents may not have been informed concerning the exchanges between Mrs. Wooley and Mrs. McCabe and did not know of the hostility on the subject, they did condition payment of the agreed sum on releases and assignments executed by both note payees. Until that assignment vested Mrs. Wooley with full ownership of the note, she could

not specifically perform the undertaking to sell respondents the note nor would a judgment for specific performance have been of any practical effect.

■ Respondents contend, and the trial court apparently assumed, that the ultimate delivery of the McCabe assignment to appellant validated Mrs. Wooley's earlier agreement which then ripened into a specifically enforceable obligation. The difficulty with that argument is respondents based their cause of action on the limited foundation of § 473.303, RSMo.Supp.1984. That statute serves only to give authority for recovery of judgment on a contract specifically enforceable against the decedent lacking only the execution by the decedent. As the facts here demonstrate, the contract for the discounted payment of the note was not specifically enforceable up to and including the date of Mrs. Wooley's death. Respondents therefore made no case under the statute upon which they based their cause of action.

We do not consider whether the death of Mrs. Wooley served to revoke the executory contract or whether respondents had a potential claim against the estate for breach of contract. Such a cause was not cognizable under § 473.303, RSMo.Supp. 1984 which is by express terms limited to cases in equity. The cause may not now be converted into one against the estate on a breach of contract theory because respondents filed no claim against the estate within six months after the first published notice of letters of administration. Section 473.360, RSMo.Supp.1984. Any claims not so filed are barred from recovery on estate assets being administered. *White v. Roberts,* 637 S.W.2d 332, 334 (Mo.App.1982). To allow the present judgment to stand would be, in effect, to allow a claim against the estate for some $9,000.00 (the difference between the present value of the note and the discount) contrary to the provisions of the non-claim statute. Moreover, the consequence would also place appellant in contravention of § 443.160, RSMo.1978 which authorizes satisfaction of a deed of

trust by an executor or administrator only after payment of the note secured.

■ The foregoing discussion has assumed that the agreement between Mrs. Wooley and respondents for the sale of a mortgage note would have been specifically enforceable in equity under the provisions of the statute on which respondents' suit relied if Mrs. Wooley had acquired full ownership of the note before her death. Counsel however have cited no authority for that proposition and independent research has disclosed no case in which § 473.360, RSMo.Supp.1984 has been applied except to contracts involving the sale of real estate. It is not necessary here to speculate what unperformed contracts of a decedent other than for the sale of real estate would also be specifically enforceable under the cited statute. Here, Mrs. Wooley's agreement to sell respondents the subject note at a discount is not enforceable in equity not only because of the decedent's lack of capacity to perform, but because respondents' loss is calculable and compensable in money damages.

■ In determining whether a prospective award of damages in an action at law would be adequate so as to bar specific performance, the inquiry is whether the award of damages would put the injured party in a situation as beneficial to him as if the agreement were specifically enforced. *State ex rel. Dowd v. Turpin*, 576 S.W.2d 754, 755 (Mo.App.1979). Respondents here have made no claim to any prospective loss whatever except the interest differential between invested funds at a current rate and the rate of interest payable under the subject note. As respondents' brief describes the basis for monetary damages, they say it is the "opportunity cost" of funds placed in other investments compared to the interest charged on the note. This computation, they say, is very difficult if not impossible.

No such exotic calculation is necessary. The note had a market value as of June 21, 1983 determinable with reference to the rate of interest specified, the term of repayment and the quality of the security. Because of the early maturity date, November, 1986, and the collateral of a first deed of trust, the primary valuation factor would be the interest rate. If the rate provided in the note was above the then market, the note would be valued at a premium, if below, at a discount. Whatever the worth of the note were determined to be, respondents' damages were the difference between the market value of the note and $55,000.00, the price at which Mrs. Wooley agreed to sell. What respondents could possibly have earned on other investments, whether it was necessary for them to borrow money to meet their part of the contract or what the estate would do or could have done with its funds are immaterial.

■ Respondents also claim that the case is within those situations where a contract is made for the sale of real estate. This follows, they say, because a release of the deed of trust entails a recording of an instrument, a release deed or a marginal entry, affecting title to the property in question.[2] In the first place, the contract proposed by Mrs. Wooley did not refer at all to a deed, only a sale of the note. We are not favored with citations of Texas law, but assume a deed of trust recorded there may be released by the holder of the note, be he payee or assignee. It was unnecessary for Mrs. Wooley to prepare or sign any instrument for recording to consummate the agreement.

**2.** As this opinion observes, § 473.303, RSMo. Supp.1984 appears to refer substantially if not exclusively to conveyances of real estate by deed. If, as the dissenting opinion suggests, it is the lien encumbrances of the mortgage which serves to invoke the remedy of specific performance, a decree by a Missouri court would be inoperative upon title to Texas real estate and would be jurisdictionally defective. Section 508.030, RSMo.1978; *Sisk v. Molinaro*, 376 S.W.2d 175, 177 (Mo.1964). The parties have not considered or briefed this issue and the dissent does not discuss how a Missouri decree could operate in the transfer of a mortgagee's title in Texas to Texas realty.

Secondly, respondents have never claimed to have sustained any damages, apart from the interest differential, because the lien of the deed of trust continued to encumber their property or because they were unable to prepay the note. Nothing in the agreement with Mrs. Wooley indicated and no evidence in the case suggests that respondents' objective was to prepay the note for the purpose of freeing their property from the deed of trust. A release of the mortgage was a mere incidental consequence to follow upon respondents' purchase of the note which, in turn, was advantageous to respondents only because of the substantial discount. The transaction was therefore not one to which the remedy of specific performance was applicable under the theory that a sale of an interest in real estate involves a unique asset.

The trial court erred in ordering specific performance under § 473.303, RSMo.Supp. 1984 because the contract between respondents and Mrs. Wooley was not specifically enforceable as of the date of death. Even were Mrs. Wooley to have been capable of performance, however, specific performance was not an available remedy because respondents' damages, if any, were recoverable in money.

The judgment is reversed.

SOMERVILLE, J., concurs.

KENNEDY, J., dissents in separate opinion.

KENNEDY, Judge, dissenting.

I respectfully dissent.

The majority opinion holds that in order for specific performance to be available to the purchasers of the promissory note, the *remedy* of specific performance must have been available under § 473.303, RSMo. Supp.1984, before Mrs. Wooley's death. Since Mrs. Wooley could not specifically perform at the time of or before her death (because of Mrs. McCabe's outstanding interest in the note and mortgage), the opinion says, the personal representative could not be called upon to perform in specie

even after the defense of impossibility of performance was removed.

The opinion gives § 473.303, supra, an entirely too restrictive reading. The aim of the statute is simply to put the personal representative in the place of the decedent, and to provide a procedure to compel him (or permit him) to do what the decedent would or could have been compelled to do, to wit, to perform the contract. The majority opinion gives the personal representative a defense to a suit for specific performance which the decedent would not have had. That interpretation of the statute is unnecessary and unintended. The remedy of specific performance is universally granted in an otherwise proper case when the original impossibility of performance is removed. Impossiblity of performance, in order to cut off the remedy of specific performance, must exist at the time of the decree. It is no defense to a suit for specific performance that the impossibility of performance had existed at some earlier time. See appendix attached hereto, which was an opinion prepared by me for adoption by the panel, but which did not get the agreement of my two colleagues.

The majority opinion, while basing its decision upon the premise that the remedy of specific performance was not available to the Ellises because of the existence of the defense of impossibility of performance at the time of Mrs. Wooley's death, goes ahead to make some assertions and raise some doubts which ought not to go unchallenged.

The first such matter is whether § 473.-303, RSMo.Supp.1984, applies to any kind of contract except a contract for the conveyance of real estate. That question seems to me to have been fairly clearly answered by the amendment of 1980, effective January 1, 1981. The statute before that amendment by its terms applied only to contracts for the conveyance of real estate. The amendment eliminated any reference to real estate and was broadened to apply to any contract "specifically enforceable in equity". The clear purpose of

the amendment was to remove the earlier limitation to contracts for the conveyance of real estate.

The second matter which goes beyond what the opinion calls the dispositive point is the matter of the adequacy of the Ellises' legal remedy by money damages. The opinion treats this note as if it were a bond which one might purchase on the open market. The opinion says you simply subtract from the present market value of the note the $55,000 which the Ellises agreed to pay. The difference would be the money damages which if the Ellises collected they would be made whole.[1]

But the note the Ellises contracted to buy from Mrs. Wooley was not a note or a bond which could be replaced in the market. It was their own obligation, secured by a lien upon their own real estate. It was a unique chattel. See attached appendix.

Finally, the opinion (in Footnote 2) doubts the efficacy of a Missouri specific performance decree, since the decree would not operate in rem to cancel the lien upon Texas real estate. A decree of specific performance in equity operates in personam and there is no doubt that a Missouri court of equity could make its decree effective.

For the reasons mentioned above and for those mentioned in the appendix, I believe the trial judge was entirely correct in her ruling and I would affirm.

## APPENDIX

The probate division of the Boone County Circuit Court after a court trial ordered Robert S. Bauer, the personal representative of the estate of Mae Kathryn Wooley, deceased, to perform a contract of the decedent with the claimants, Charles T. Ellis and Edith LaNell Ellis, by which the decedent had agreed to discount to the Ellises a certain promissory note owing by the Ellises to her. Sec. 473.303, 473.310, RSMo 1978, as amended L. 1980.

The personal representative appeals. We have examined his allegations of error and have concluded that the trial court judgment is correct. We therefore affirm.

The facts of the case are as follows:

Plaintiffs Charles T. Ellis and Edith LaNell Ellis were obligors (by assumption) upon a promissory note dated November 16, 1981, payable to "Mae K. Wooley, a widow, and Madeleine Bauer". The promissory note was secured by a deed of trust on a residence located in Dallas, Texas. The original amount of the note was $65,000, the principal and interest payable in 59 equal monthly installments, with all the balance coming due at the end of five years. By May 19, 1983, the principal balance had been reduced to $64,752.14.

The note represented funds of Mae K. Wooley, and Madeleine had made no contribution thereto. The evidence is clear that she considered the note her own. She had it in her possession. She received the payments thereon. She dealt with it as her own.

In May 1983, Mrs. Wooley, a lady of advanced age, initiated negotiations with the Ellises to discount the note for cash. The amount of her first offer is not shown, but the Ellises countered with an offer to pay $48,000. She wrote to them on May 19 offering to accept $55,000. We do not have any evidence of a direct reply from the Ellises expressly accepting this offer. However, the parties stipulated to the following facts among others:

24. On or about May 22, 1983 (the Ellises) received (the Wooley letter offering to sell the note to them for $55,000 cash) and telephoned the decedent.

25. On or about May 23, 1983 (the Ellises) went to the office of Frank I. Hopkins, an employee of Southwest Land and Title Company, Dallas, Texas, and brought with them a copy of decedent's (letter offering to transfer note for $55,000 cash).

---

1. What if the note, because of the insolvency of the maker and the value of the security, were worth less than $55,000? Would the remedy of damages then be adequate?

26. (The Ellises) requested that Frank L. Hopkins prepare the necessary documents to accomplish a release of the subject note in exchange for a prepayment by (the Ellises) to the decedent (Mrs. Wooley) of the sum of $55,000.

27. On May 26, 1983 Frank I. Hopkins mailed to (Mrs. Wooley) documents required to effect a release of the subject lien, which documents required the signature of both Madeleine Bauer McCabe and the decedent. Accompanying these documents was a letter written by Frank I. Hopkins dated May 26, 1983, a true and exact copy of which is appended hereto...

The Hopkins transmittal letter and the documents were received by Mrs. Wooley on June 1. The letter concluded: "Upon receipt of the executed release we will forward a cashier's check from Charles Ellis in payment of the lien."

Madeleine Bauer, the second payee on the promissory note, was the adopted daughter of Mrs. Wooley. During the times mentioned here, she lived in Fairfax, Virginia. She had been married to Robert S. Bauer (now the personal representative of Mrs. Wooley's estate), but they had been divorced and she had evidently remarried. The relationship between Madeleine and her mother was discordant. Mrs. Wooley lived with Robert S. Bauer in Columbia, having moved there in December, 1982. At the time of her negotiations with the Ellises, she had been trying to secure from Madeleine a release of her interest in the note—or as she put it in a letter to Madeleine to "take your name off my note". In February, 1983, her attorney had written to Madeleine sending her a document entitled "Assignment and Endorsement" for her execution, the effect of which would be to release her interest in the note. On June 16, 1983 Madeleine executed this document. She returned it to Mrs. Wooley along with a letter dated June 17, 1983—although the envelope is postmarked June 23. Exactly when this arrived at Mrs. Wooley's residence we do not know, but it was received

there in due course. In the meantime Mrs. Wooley had died on June 21, 1983. She was 89 years old at the time of her death.

Robert S. Bauer as personal representative of Mrs. Wooley's estate declined to honor Mrs. Wooley's agreement to sell the note for $55,000, and the Ellises commenced this specific performance suit, with the results noted in the first paragraph hereof.

I

*Offer and acceptance.*

The personal representative says first that there was no contract between Mrs. Wooley and the Ellises for the discount of the note for $55,000. The Ellises say on the other hand that Mrs. Wooley's letter of May 19, 1983 containing an offer to discount the note for $55,000 was the offer, and that the Hopkins letter dated May 26, 1983, enclosing documents for execution by Mrs. Wooley and Madeleine, was their acceptance of Mrs. Wooley's offer—and that a contract thereupon came into existence. The personal representative contends that the Hopkins letter was not an acceptance but was a *counteroffer* which would become a contract only upon acceptance by Mrs. Wooley. This argument he bases upon the hypothesis that the Hopkins letter imposed "additional requirements". He says: "No contract could come into existence until Mrs. Wooley and Mrs. McCabe performed by signing the documents, obtaining notarization, and transmitting them to respondents."

We reject the personal representative's argument. We think the Hopkins letter did not impose "additional requirements", but that it constituted an acceptance on Ellises' behalf of Mrs. Wooley's offer contained in her May 19 letter. It was implied in Mrs. Wooley's offer that she would perform the routine acts necessary to complete her end of the deal. That the Ellises, through the Hopkins letter, required those acts to be performed did not impose any new obligation or condition upon Mrs. Wooley. Mrs. Wooley must be held to have expected to secure the transfer of title to the note—

including the title of Madeleine Bauer McCabe—and must be held to have expected to execute the documents necessary to release the lien of the promissory note.

The personal representative argues here that Mrs. Wooley was proposing to sell only her own interest in the note for $55,-000, leaving outstanding Madeleine Bauer McCabe's interest. That is clearly not so. She treated the note as her own, thought of it as her own, dealt with it as her own, and supposed that it was her right to insist that Madeleine Bauer McCabe sign whatever was necessary to get her name off the note. As a further answer to this argument of the personal representative, we may add that the parties may be presumed not to have offered or accepted an absurd proposition, i.e., for the debtors to put out $55,000 cash without a release both of the promissory note and the real estate lien by both payees of the note.

We hold that the trial judge's finding that a contract did exist between the Ellises and Mrs. Wooley is amply and inescapably supported by the evidence.

## II

The personal representative next attacks the remedy of specific performance. He says that the remedy of specific performance is not in order in a case like this, in that the contract did not involve the conveyance of real estate or of a unique chattel. He says that the Ellises' remedy by damages would have been adequate, and that therefore the equitable remedy of specific performance is unavailable to them.

The personal representative says also that since Madeleine Bauer McCabe was not a party to the contract between Mrs. Wooley and the Ellises, and since Mrs. Wooley could not require Mrs. McCabe to release her interest in the promissory note, that it was impossible for Mrs. Wooley to perform the contract and that this impossibility of performance prevents the specific performance remedy.

Adequacy of legal remedy.

We hold that the remedy of damages would not have been adequate, cf. *Priest v. Oehler*, 328 Mo. 590, 41 S.W.2d 783 (1931). See also Pomeroy Equity Jurisprudence, § 1402 (5th ed.) This promissory note does not have any prepayment privileges. Mrs. Wooley could have refused to accept advance payment of the promissory note. *McCarty v. Mellinkoff* [118 Cal.App. 11], 4 P.2d 595, 596 (Cal.App.1931); *Kohlenberg v. American Plumbing Supply Co.* [82 Wis.2d 384], 263 S.W. [N.W.] 2d 496, 501–02; § 3–604, Uniform Commercial Code (adopted both in Missouri and Texas); 10 C.J.S. Bills and Notes § 462 (1938); 11 Am. Jur.2d Bills and Notes § 967 (1963). Therefore the only way to get the lien off the real estate was to get her to agree to release it. If the note had contained prepayment privileges, we would have a somewhat different case, in that the Ellises might then (if funds had been available to them) have paid the face amount of the note, and brought an action for the difference between the amount Mrs. Wooley had agreed to accept and the amount they were required to pay in order to secure the release. (We do not mean to say the right to prepay would have made specific performance unavailable to the Ellises; that case is not before us.) The personal representative does not undertake to instruct us how damages would be computed in the case we have before us or how, within the rules for the measurement of damages for breach of contract, a damage award could have been adequate. Cf. *State ex rel. Dowd v. Turpin*, 576 S.W.2d 754, 755 (Mo.App.1979); 81 C.J.S. Specific Performance Sec. 8b (1977).

This note was unique, because it was the obligation of the contracting buyers themselves, and it constituted a lien upon their real estate. They could not go into the market and replace it with another note. It was clearly a unique chattel. See *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694, 699 (Mo.App.1981.)

Impossibility of performance.

As to the impossibility of performance because Madeleine Bauer McCabe had not

agreed at the time of the contract to release her interest, this point, too, must be ruled against the personal representative. It is true that a decree for specific performance would not have been possible at the time the contract was entered into, for the very reason suggested by the personal representative. *Allen v. Allen,* 285 Ala. 641, 235 So.2d 788 (1970); 81 C.J.S. Specific Performance, §§ 18b and 18c (1977). However, by the time of the decree Madeleine had released her interest in the promissory note. At the time the suit was filed, and certainly at the time of the decree, it was within the power of Mrs. Wooley's personal representative to perform the contract. The defense of impossibility of performance relates to the time of the decree; if performance is possible at that time, it makes no difference that it might at some earlier time been impossible to perform. 81 C.J.S. Specific Performance §§ 18b and 18c (1977).

The judgment is affirmed.

### ON MOTION FOR REHEARING

PER CURIAM.

Respondents call attention in their motion to an aspect of this case alluded to in our opinion but not briefed or argued by the parties prior to the present motion. The subject is an unresolved cause of action for breach of contract. The motion points to Count III of respondents' original petition filed in the trial court seeking money damages and argues that if the judgment for specific performance is to be reversed, the case should be remanded for disposition of this damage count. That prospect surfaces for the first time in the rehearing motion but requires attention because the elements of the cause in specific performance impairing the validity of the judgment as rendered do not necessarily bar respondents from obtaining alternate relief.

A review of the legal file discloses that respondents did include in their petition an alternate Count III in which a claim was postulated against the estate for damages in the amount of $10,000 calculated as the difference between the then unpaid principal balance of the note in question, some $65,000, and the settlement figure agreed to by Mrs. Wooley, $55,000. This count was in the alternative and was not ruled upon by the trial court because the entry of judgment ordering specific performance rendered the claim moot. The theory of Count III appears to be a cause for breach of contract stemming from the failure of the estate to perform Mrs. Wooley's undertaking to settle the note balance on a discounted basis. At a minimum, it may be taken that such an agreement between Mrs. Wooley and respondents was proved.

A case instructive in these circumstances is *Feigenspan v. Pence,* 168 S.W.2d 1074 (Mo.1943). There, the issue was an alleged agreement by the deceased to convey certain real estate to plaintiffs in consideration for services. The conveyance was not made and plaintiff brought suit for specific performance against the heirs who had acquired title by intestate succession. Although the court found specific performance unavailable for a variety of reasons, including inadequacy of pleading and failure of proof that the contract was fair, and reversed the judgment, the case was remanded for pleading and proof of the reasonable value of the services. The theory announced is that once the court has become possessed of the case, plaintiff should not be deprived of all relief merely because the basis for the original judgment is held to be flawed.

Here, there has been no showing, as was the case in *Feigenspan,* that respondents are entitled to any equitable relief for services rendered or expenses incurred, but the cause of action for breach of contract was at least preserved by the alternative count. They are entitled to a trial on that count and to disposition of their claim under the alternate theory. The case should be remanded for that purpose.

It is to be noted that remand of the case for disposition of the damage count does not constitute an expression of opinion on the question of notice under § 473.360,

**450**

RSMo.Supp.1984, mentioned previously, or on the question of whether the manner of filing the original petition invests the probate division with jurisdiction of a suit for breach of contract. The attention of the parties is directed to § 472.020, RSMo. Supp.1984 and to §§ 478.240 and 478.245, RSMo.1978 and to *Webb v. First National Bank and Trust Co. of Joplin*, 602 S.W.2d 780, 783 (Mo.App.1980).

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

All concur.