In the ESTATE OF George MOUNTS, Deceased.

Chris Thornton and JoAnn Thornton, Plaintiffs–Respondents,

v.

Kay Barrett, Personal Representative, Defendant–Appellant.

No. 23511.

Missouri Court of Appeals, Southern District, Division One.

Dec. 7, 2000.

Motion for Rehearing or Transfer to Supreme Court Denied Dec. 29, 2000.

---

Mark C. Fels, Smith & Fels, P.C., Springfield, for appellant.

Randall R. Sutter, Lebanon, for respondents.

PARRISH, Judge.

Kay Barrett, personal representative of the Estate of George Mounts, deceased, appeals a judgment granting specific enforcement of a contract to which decedent was a party. The finding that the contract is entitled to specific enforcement is affirmed. The judgment, as entered, is reversed for lack of specificity. The case is remanded with directions to enter judgment consistent with this opinion enforcing the contract in question.

The decedent was a resident of Laclede County, Missouri, prior to his death. Chris Thornton and Joann Thornton are residents of Laclede County. According to an agreed statement of facts on which the trial court decided this case, "on or about the 9th day of March, 1998[,] Decedent and [Chris Thornton and Joann Thornton] entered into [a] contract"

whereby decedent would sell certain real estate to Mr. and Mrs. Thornton. Decedent's date of death was April 25, 1998.

The contract that is the subject of this appeal described the real estate to which it applied as:

The North Half of Lot 1 Southwest Quarter, the North Half of the Southeast Quarter and the Southeast Quarter of the Northeast Quarter, all in Section 18, Township 33, Range 16, containing 160 acres, more or less (full legal description to govern)[.]

The agreed statement of facts filed with the trial court states:

That at all times herein pertinent, Decedent was the owner of the following described real estate located in Laclede County, Missouri, to-wit:

The Southeast Quarter of the Northeast Quarter (SE ¼ NE 1/4), and the Northeast Quarter of the Southeast Quarter (NE ¼ SE 1/4) of Section Eighteen (18), Township Thirty-three (33), Range Sixteen (16), containing Eighty (80) acres, more or less, in Laclede County, Missouri.

AND

The Northwest Quarter of the Southeast Quarter and the North Half of Lot One of the Southwest Quarter of Section Eighteen (18), Township Thirty-three (33), Range Sixteen (16) and containing 80 acres more or less[.]

The Thorntons rented the property decedent owned in Laclede County "for six or seven years prior to his death." They paid $700 per year.

Chris Thornton and Joann Thornton filed a petition in decedent's probate estate requesting an order that decedent's personal representative convey the property described in the contract to them. The probate division of the Circuit Court of Laclede County entered judgment in favor of the Thorntons. It ordered that the agreement be specifically enforced stating:

That upon payment by [the Thorntons] to [decedent's personal representative] of the sum of Ninety Thousand Dollars ($90,000.00) [decedent's personal representative] shall execute and deliver to [the Thorntons] a deed with the usual covenants, conveying to [the Thorntons] [the real estate decedent owned in Laclede County as described in the agreed statement of facts filed in the trial court.]

The personal representative's first point on appeal asserts that the trial court erred in ordering specific enforcement of decedent's contract because Chris Thornton and Joanne Thornton had not fully performed their obligations under the contract prior to the death of decedent. Point I contends that the applicable provisions of the probate code, §§ 473.303–.313,[1] do not permit the granting of specific enforcement of a contract under those circumstances.

The personal representative, Ms. Barrett, relies on *In the Estate of Wooley*, 701 S.W.2d 440 (Mo.App.1985), to support Point I. She relies on a statement referring to § 473.303, RSMo Supp.1984,[2] that provides, "That statute serves only to give authority for recovery of judgment on a contract specifically enforceable against the decedent lacking only the execution by the decedent." 701 S.W.2d at 443. She

---

1. References to statutes are to RSMo 1994, unless stated otherwise.

2. The 1994 revision of § 473.303 is unchanged from § 473.303, RSMo Supp.1984, cited in *Wooley*. The applicable part of § 473.303 states:

1. If a decedent entered into a contract, specifically enforceable in equity, and did not execute the same in his lifetime, nor give power by will to execute the same, the other party, wishing specific execution of the contract, or the personal representative of the decedent, may present a verified petition to the court, setting forth the facts and stating that no part of the contract has been satisfied except as set forth, and praying that an order be made that the personal representative execute such contract specifically, by executing a deed for the same.

argues that because the purchase price of the real estate owned by decedent at the time of his death had not been paid or tendered, the contract was not subject to enforcement by reason of § 473.303 because the contract was not "lacking only the execution by the decedent." *Wooley, supra.* This court does not agree.

To give the meaning Ms. Barrett attributes to the sentence quoted ignores the sentence that follows the one on which she relies. After stating the statute serves only to give authority to specifically enforce a contract "lacking only the execution by the decedent," *Wooley* states, "As the facts here demonstrate, the contract for the discounted payment of the note was not specifically enforceable up to and including the date of Mrs. Wooley's death." *Id.* at 443. That is not the situation in this case.

*Wooley* dealt with an agreement to discount a promissory note. The note was payable to Mrs. Wooley and her daughter, Madeline McCabe. Mrs. Wooley had agreed with the debtors[3] to discount the promissory note in exchange for its payment at a time prior to its maturity date. However, Ms. McCabe was not a party to the agreement to discount the promissory note. *Wooley* concluded that the agreement between Mrs. Wooley and the owners of the real estate was a bilateral contract. Its terms were:

> [The owners of the land that secured payment of the promissory note] agreed that if the note were assigned and released, they would pay $55,000.00. Mrs. Wooley promised that if the money were paid, she would assign and release the note. These promises were, however, subject to the condition that Mrs. Wooley procure from Madeline McCabe the assignment of her interest in the note.

Had Mrs. McCabe persisted in her refusal to assign her interest in the note, the agreement would not have been specifically enforceable ... against Mrs. Wooley because Mrs. Wooley was incapable of transferring full ownership of the debt.

701 S.W.2d at 443.

*Wooley* explains, "Until that assignment vested Mrs. Wooley with full ownership of the note, she could not specifically perform the undertaking to sell respondents the note nor would a judgment for specific performance have been of any practical effect." *Id.* Ms. McCabe had not assigned her interest in the promissory note to Mrs. Wooley prior to Mrs. Wooley's death. Thus, the contract was not "specifically enforceable in equity" as required in order to pursue the remedy provided by § 473.303.1, RSMo Supp.1984.

In this case, the decedent, Mr. Mounts, had promised to convey land to the Thorntons before his death. In return, the purchasers were to pay Mr. Mounts an agreed sum. As in *Wooley,* there was a bilateral contract, "a promise for a promise." 701 S.W.2d at 443. However, unlike Mrs. Wooley, Mr. Mounts was capable of performing his promise to convey the real estate in question. His agreement was enforceable.

The argument portion of the personal representative's brief directed to Point I further argues that the Thorntons were not entitled to specific enforcement of their contract with decedent because they had not tendered full performance of their obligation at the time of decedent's death.[4] However, the "Agreed Statement of Facts" on which the trial court decided the claim now on appeal includes no agreed statement regarding whether or not perfor-

---

3. The debtors were the owners of real estate that was subject to a deed of trust securing the note in question. They had assumed the indebtedness represented by the note when they purchased the real estate from the original makers of the note.

4. The real estate sale was to be closed on or before May 1, 1998. Decedent's date of death was April 25, 1998.

mance was tendered. (Albeit that the agreed statement includes a numbered paragraph stating, "[The Thorntons] allege that at the time of Decedent's death, [they] were ready, willing and able to close on the Earnest Money Contract ... and Estate lacks knowledge of any contrary evidence.")

■ The record on appeal does not reveal that the personal representative sought determination of this issue in the trial court. A party to an appeal is not entitled to raise an issue on appeal not previously placed before the trial court. *Boshers v. Humane Soc. of Missouri, Inc.,* 929 S.W.2d 250, 254 (Mo.App.1996). "On appeal, a party is bound by the position taken in the trial court, and an appellate court will not convict the trial court of error on an issue which was not put before it." *Id.* Point I is denied.

Point II asserts the trial court erred in entering judgment for specific enforcement because:

A. The contract was not specifically enforceable in equity as of the date of the decedent's death in that the contract's condition precedent of approval of the transaction by the decedent, as owner of the real estate, had not been satisfied as of the date of his death.

B. The contract was not specifically enforceable in equity as of the date of the decedent's death in that the decedent died prior to the time for either party to perform under the contract.

C. The contract was not specifically enforceable in equity as of the date of the decedent's death in that it was not supported by any consideration in the form of earnest money.

■ Part A of Point II is directed to language in the contract that states, "THIS SALE under above terms and conditions is made subject to the approval of the OWNER of this property." As this court perceives the personal representative's argument, she contends decedent was required to do something more than

execute the March 9, 1998, agreement in order for it to have been binding and, therefore, enforceable against decedent's estate.

The "subject to approval" language quoted above is the last sentence in the contract. The contract appears to be on a printed form with blanks that were filled in before it was signed. It is entitled "EARNEST MONEY CONTRACT." "LEBANON, MISSOURI" is printed immediately below and to the right of the title, followed by the typewritten date "March 9, 1998" on a printed line provided for that purpose. The agreement next recites:

> Received of *Chris Thornton and JoAnn Thornton, husband and wife,* the sum of *No/100* ... DOLLARS ($ __-0-__ ) as earnest money and part purchase money for a certain parcel of land described as follows, to-wit:
>
> *(DESCRIPTION)*
>
> The North Half of Lot 1 Southwest Quarter, the North Half of the Southeast Quarter and the Southeast Quarter of the Northeast Quarter, all in Section 18, Township 33, Range 16, containing 160 acres, more or less (full legal description to govern)
>
> All Closing fees to be paid by Buyers, as well as all Title Insurance.
>
> Buyers will be assuming ALL FEES.
>
> Which property is this day sold to BUYERS for the total sum of *Ninety Thousand and No/100* _____ DOLLARS ($ *90,000.00* ) payable as follows:
>
> TERMS OF SALE
>
> CASH AT CLOSING.
>
> Taxes are to be *By Seller for 1997 and all prior years—BUYER will pay all of 1998 Taxes.*

That text is followed by printed recitations concerning requirements that decedent show proof of marketable title and the obligation for paying a title company's

search fee. The text of the agreement continues:

> This sale under this contract to be closed on or before *May 1, 1998* at the office of JEFFRIES ABSTRACT COMPANY, and if not closed by that time, owning [sic] to the falure [sic] or neglect of the BUYER to comply with the terms herein, the above-mentioned earnest money is to be forfeited to SELLER, but such forfeiture shall not release said BUYER herein from any liability for the fulfillment of this contract of sale, or the payments of money herein mentined [sic], if said SELLER shall elect to enforcement fulfillment of the same.

That language is followed by the "subject to approval" language heretofore quoted. Two signature lines appear below that statement as follows:

> */s/ George W. Mounts* George W. Mounts
>
> */s/ Chris Thornton 4/4/98* Chris Thornton

The parties' agreed statement of facts recites, "Other than the Earnest Money Contract ..., the [Thorntons] entered no other contracts with the Decedent for the purchase of said real property." Ms. Barrett argues that the "subject to approval" language in the contract "on its face" appears to contemplate future action by the property owner in order for it to have efficacy. She cites *Beck v. Hoel–Steffen Const. Co.*, 605 S.W.2d 810 (Mo.App.1980), in support of her argument.

*Beck*, however, did not address the issue the personal representative raises in this appeal. *Beck* involved a contract. It was a form contract for use in accounting for an escrow deposit. It stated the terms of the real estate sale to which it applied. It provided a place for signatures of both seller and purchaser. However, *Beck* did not address the claim that the contract had no vitality unless and until it was approved by the seller on the date prescribed. *Beck* stated, with respect to the approval language, that the language "inspire[s] aca-

demic curiosity but ... need not be explored." *Id.* at 814. The parties in *Beck* signed an amendment to the contract on the day before the approval deadline. *Beck* held that if approval were required, this would have constituted approval by the seller, suggesting, "In making the amendment the parties recognized the vitality of the sale contract. If there was no pre-existing agreement, it was incapable of being amended." *Id.* In *Beck*, it was not necessary to determine the effect of approval language in the contract. No determination was made.

*Beck* states principles of construction, however, that are apropos, generally, in contract disputes.

> Where an agreement is susceptible of two constructions, one of which renders the contract invalid and the other sustains its validity, the latter construction is preferred. *Perbal v. Dazor Manufacturing Corp.*, 436 S.W.2d 677, 689[27] (Mo.1968). "[A] 'contract of doubtful meaning will be given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage of another.' *Veatch v. Black*, 363 Mo. 190, 250 S.W.2d 501, 507[2, 3]." *Hammond v. Wheeler*, 347 S.W.2d 884, 895[6] (Mo. 1961). A contract must be construed in its entirety, giving effect to every part thereof, if that be fairly and reasonably possible, and in construing a contract of doubtful meaning, the court properly may consider the subject matter of the contract, the facts and circumstances attending execution thereof, and the apparent purpose which the parties were undertaking to accomplish. *McIntyre v. McIntyre*, 377 S.W.2d 421, 425 [4, 5] (Mo.1964)....

605 S.W.2d at 813.

In this case, as in *Beck*, the form contract that was used was intended for use by an escrow agent. Here, however, there was no escrow deposit. Thus, the form was modified to be a sales contract. It provided that decedent was selling the par-

cel of land he owned that consisted of "160 acres, more or less," to Chris Thornton and Joann Thornton. The purchase price was $90,000 to be paid in cash at closing. Decedent was responsible for paying taxes for 1997 and prior years. The Thorntons were to pay all of the 1998 taxes. Decedent was to furnish the Thorntons with title insurance showing he had marketable title.

There was a paragraph addressing use of an abstract as proof of title. The center of that paragraph had the handwritten letters "NA" circled and superimposed over the printed language. The paragraph that followed prescribed requirements if title insurance was to be provided. If it failed to show marketable title in decedent, decedent would pay the search fee charged by the title company, not to exceed $90. It stated that under those circumstances, earnest money would be refunded to the Thorntons, a provision that was moot since no earnest deposit had been paid.

The sale was to be closed at Jeffries Abstract Company on or before May 1, 1998. Identification of Jeffries Abstract Company as the place of closing appears to be part of the printed form—it does not appear to have been inserted on a line provided for that purpose. (It is inferable that the form "EARNEST MONEY CONTRACT" was a form obtained from or provided by that company.)

The Thorntons had dealt with decedent with respect to the property that is the subject of the contract for the six or seven years they rented the property. The Thorntons and decedent were familiar with one another. They were familiar with the property. The contract does not reveal a real estate agent involved in the transaction. It does not reflect an attorney's involvement. The form, without modification, would lend itself to circumstances in which a prospective purchaser would make an escrow deposit with the title company, sign the agreement and await a prospective seller's acceptance of an offer to purchase the subject real estate. In the event the prospective seller would not accept the offer, he or she would not sign the escrow agreement, and the escrow deposit would be returned to the purchaser in that the "owner" of the property sought would not approve the sale on the proposed terms. If a prospective seller accepted a purchaser's offer, he or she would sign the escrow agreement thereby approving the sale.

In this instance there was no other contract. Although the stipulated facts do not reveal what party signed the agreement first, it is inferable, in view of the "4/4/98" date that appears following Mr. Thornton's signature that the seller, in this instance decedent, caused the title company's form escrow agreement to be modified to serve as a sales contract, signed it on the date reflected at the top of the instrument, thereby approving the terms and conditions of the sale in anticipation of the purchasers signing the agreement and, thereafter, on the date disclosed by Mr. Thornton's signature, the document was signed by him for the purchasers. The apparent purpose the parties were undertaking was the sale of the real estate by decedent to the Thorntons. Considering the contract in its entirety, including the handwritten date following Mr. Thornton's signature, a reasonable construction of the contract would be that decedent was the first to execute the agreement; that by doing so he approved the sale according to the terms stated, thereby sustaining the validity of the contract. To require a seller to manifest approval of a contract he had already executed would be redundant. This construction is consistent with the trial court's judgment. Part A of Point II is denied.

The basis for Part B of Point II was addressed in determining Point I. Part B is denied.

█ Part C of Point II argues the contract was not enforceable because "it was not supported by any consideration in the form of earnest money." The fact that no earnest money was paid does not establish

a lack of consideration. Decedent promised to close the transaction upon completion of title requirements and the Thorntons making payments as specified by the contract. The Thorntons promised to pay the price in the manner prescribed, viz., "CASH AT CLOSING." As explained in *Estate of Wooley, supra,* the consequence of such an agreement is "a bilateral contract, a promise for a promise." 701 S.W.2d at 443; *see also Hahn v. Earth City Corp.,* 625 S.W.2d 640, 642 (Mo.App. 1981), and *Vondras v. Titanium Research & Development Co.,* 511 S.W.2d 883, 886 (Mo.App.1974). Part C of Point II is denied.

■ Point III asserts the trial court erred in entering judgment for Chris Thornton and Joann Thornton because no determination was made that the contract purchase price was equitable and there was no evidence upon which the trial court could have made that determination. Ms. Barrett relies on *Summers v. Correll,* 853 S.W.2d 397 (Mo.App.1993), as support for Point III. That reliance is misplaced.

*Summers* was a conservatorship proceeding relating to a real estate contract entered into by co-guardians and co-conservators. They sought approval of the sale as prescribed by § 473.513.3. One of the protectees died prior to the request for approval. The probate division of the circuit court in which the guardianship/conservatorship was pending determined it lacked jurisdiction to approve and enforce the contract due to the ward's death. That decision was appealed. It was affirmed. *Summers* held, "Approval cannot be given after the death of the protectee in a conservatorship estate absent a finding by the court that sale of the real property is necessary to wind up the estate." 853 S.W.2d at 401–02.

The inapplicability of *Summers* is obvious. *Summers* relates to a conservatorship. The probate estate in this case is not a conservatorship. This case involves administration of a decedent's estate. It is not affected by § 473.513. Sections §§ 473.303–.313 govern the administration of a decedent's estate.

"[T]he policy of the law is to let the parties weigh the benefits pro and con and to leave them free to make whatever contract between themselves that they please." *Christeson v. Burba,* 714 S.W.2d 183, 195 (Mo.App.1986). Section 473.307 provides the means for enforcing such a contract after a party to the contract dies. Point III is denied.

Point IV contends the trial court erred in entering judgment enforcing the contract in question because the contract was not signed by both prospective purchasers. Chris Thornton and Joann Thornton, husband and wife, are named in the "EARNEST MONEY CONTRACT." However, only decedent's and Chris Thornton's signatures appear on the contract.

The petition to enforce the contract is that of both Chris Thornton and Joann Thornton. The "Agreed Statement of Facts" on which the case was submitted to the trial court includes "[t]hat on or about the 9th day of March, 1998[,] Decedent and [the Thorntons] entered into that certain 'earnest money contract,' a copy of which is labeled Exhibit A, attached hereto and made a part hereof by reference."

■ "A judicial admission is an act by a party which in effect concedes a point to be true for purposes of the judicial proceeding and which acts as a substitute for evidence and obviates the need to present evidence on the matter." *Fust v. Francois,* 913 S.W.2d 38, 46 (Mo.App.1995). It is conclusive on the party making it. *Kelly v. State,* 623 S.W.2d 65, 68 (Mo.App. 1981). Having admitted, for purposes of the litigation, that the petitioners in this proceeding, Chris Thornton and Joann Thornton, entered into the contract that was before the trial court, the personal representative has no standing to now assert otherwise. As previously noted, on appeal a party is bound by the position taken in the trial court. *Boshers v. Humane Soc. of Missouri, Inc., supra.* Ap-

pellate courts will not convict a trial court of error on issues not put before it. *Id.* Point IV is denied.

The personal representative's final point, Point V, asserts error by the trial court's entry of judgment for enforcement of the contract because "there is no basis ... to order the personal representative to execute a deed 'with the usual covenants' since the contract is wholly silent as to deed covenants or warranties."

Section 473.310.2 relates to an instrument of conveyance a personal representative would give to a person entitled to enforcement of a contract. It provides:

> The deed of conveyance shall refer in apt and appropriate terms to the order of court under which it is made, shall convey the property according to the order and shall be acknowledged by the personal representative. *If the contract for a conveyance requires the giving of warranties, the deed to be given by the personal representative shall contain the warranties required.* Such warranties shall be binding on the estate as though made by the decedent but shall not bind the personal representative personally. [Emphasis added.]

Mindful that one claiming under a decedent can convey no better title than held by the decedent at his or her time of death, *Fellows v. Wise*, 49 Mo. 350, 352 (1872), it is appropriate that any judgment in this case, entered in accordance with § 473.310 .1, state whether warranties are required and, if so, what warranties. The issue raised in Point V warrants reversal of the judgment for the sole purpose of permitting entry of a new judgment of specific enforcement that addresses whether warranties shall or shall not be included in the instrument conveying title to the Thorntons. This case should be remanded for that purpose. In all other respects, Point V is denied.

The trial court's finding that the contract is entitled to specific enforcement is affirmed. The judgment is reversed to permit entry of a new judgment consistent with this opinion. The case is remanded. The trial court is directed to enter judgment for Chris Thornton and Joann Thornton directing delivery of a deed upon completion of the requirements of this opinion. Whether additional evidence is required is left to the sound discretion of the trial court.

MONTGOMERY, J., concurs

SHRUM, J., concurs in separate opinion filed

SHRUM, Judge, concurring.

I concur. I write separately because it appears this may be a case where a "form" real estate contract was selected and modified by one or more individuals who were not parties to the contract or licensed to practice law in Missouri. If so, it is another example of an undesirable but increasing phenomena, i.e., litigation stemming, at least in part, from the unlawful practice of law.

Historically, Missouri has embraced the policy that the practice of law and doing law business, both in and out of its courts, shall be limited to persons with special qualifications and duly licensed attorneys. *De Pass v. B. Harris Wool Co.*, 346 Mo. 1038, 144 S.W.2d 146, 148 [5] (1940); §§ 484.010–.02, RSMo 1994. Laymen are not allowed to practice law because it is detrimental to the public interest for non-lawyers to represent themselves to the public as being qualified to practice law when they are not. *Liberty Mut. Ins. Co. v. Jones*, 344 Mo. 932, 130 S.W.2d 945, 960 [20] (1939).

Even so, it appears to this writer there is an alarming increase in the unauthorized practice of law, especially in the area of real estate law. Inexplicably, there does not appear to be a prevalence of complaints about this trend (if it is a trend).[1]

---

1. To protect the public, the chief disciplinary counsel appointed by the supreme court is

From my observation, it is an issue about which both the Bar and the public should be more concerned. I commend this case as yet another illustration of why such concern is warranted.

empowered to investigate the unauthorized practice of law and prosecute suits for that purpose. Rule 5.29(a). Inquiry reveals that fewer complaints than anticipated have been made to the chief disciplinary counsel on this subject in recent years.